## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KIM MARIE SOWER,

        Plaintiff,

               v.

CHASE HOME FINANCE, L.L.C.,

        Defendant.

_____/

Case No. 13-15274

HON. TERRENCE G. BERG

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (DKT. 32)

### I.  INTRODUCTION

Defendant JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, moves for dismissal of this case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

### II.  FACTUAL AND PROCEDURAL HISTORY

This case arises from confusion created by the intersection of a bankruptcy, tax payments, and mortgage rights and obligations. In April 2006, Plaintiff Kim Marie Sower and her then-husband James Monroe gave a mortgage to New Century Corporation to secure an adjustable rate note for the property commonly known as 2666 E. Maple Road, Troy, Michigan. (Dkt. 32, Ex. 7, Mortgage). The note, which was for $169,400, was signed by Plaintiff but not by Mr. Monroe. (Dkt. 32, Ex. 6,

Note). From the beginning of the mortgage until June 2013, Defendant was the servicer. (Dkt. 32, p. 3).

In the summer of 2008, Mr. Monroe filed for bankruptcy. (*Id.* at 4). During the bankruptcy process, Plaintiff alleges that Mr. Monroe's attorneys told him to stop making property tax payments on the mortgaged property. (*Id.*). Mr. Monroe followed his attorneys' advice, and so did Plaintiff. (*Id.*) The result was an outstanding tax bill of approximately $8,000. (*Id.*). Plaintiff and Mr. Monroe then worked with local authorities in an attempt to create a payment plan. (Dkt. 38, p. 3). Unaware of the couple's efforts to set up a tax payment plan, but aware of the unpaid taxes, Defendant stepped in and paid the taxes in full. (Dkt. 32, p. 4). Although Plaintiff viewed Defendant's payment of the taxes as unnecessary (Dkt. 38, p. 8), in February 2009 Plaintiff and Defendant modified the loan by adding the amount paid in taxes to the back-end of the promissory note and creating an escrow account to ensure that future property taxes were paid. (*Id.*; Dkt. 32, p. 4).

After the loan modification, Plaintiff and Defendant began to disagree on the correct amount of the monthly payments and on whether Plaintiff had actually made payments for certain months. (Dkt. 38, p. 8). Plaintiff believed that Defendant had miscalculated the escrow payments and had misapplied or not accounted for her mortgage payments for some months. (*Id.*). Plaintiff and Defendant communicated via letters and telephone conversations on multiple occasions, but were unable to agree on exactly how much Plaintiff owed. (Dkt. 38, Ex. A, Kimberly Sower Aff., pp. 3-4). While the parties were communicating about the escrow

2

calculation and application of payments, the discrepancy grew between Plaintiff's and Defendant's understandings of how much Plaintiff owed. By the beginning of 2012, Defendant's records showed that Plaintiff was more than $19,000 behind on the mortgage (Dkt. 32, pp. 10-11), while Plaintiff believed that she was current and that Defendant's records were the result of the continued misapplication of Plaintiff's payments. (Dkt. 38, Ex. A, Kimberly Sower Aff., p. 4).

Sometime in 2012, Defendant commenced foreclosure proceedings. A foreclosure sale was scheduled, but the record is unclear both as to the initially-scheduled date for the foreclosure sale and the events that happened after that. Plaintiff claims that the foreclosure sale was initially scheduled for August 28, 2012, and that the sale was cancelled and rescheduled at least twice: for October 2, 2012 and October 9, 2012. (*See* Dkt. 1, Ex. 2, Sub Ex. A, State Court Complaint, p. 6[1]; Dkt. 1, Ex. 2, Sub Ex. Z, Letters from Defendant to Plaintiff). But the Sheriff's Deed provided by Defendant states that the sale was initially scheduled for June 12, 2012 and was adjourned until nearly a year later on June 4, 2013. (Dkt. 32, Ex. 16, Sheriff's Deed, p. 1).  This document also provides a calculated redemption date of December 4, 2013. (*Id.* at 6) The parties agree that the foreclosure sale actually took place on June 4, 2013 and that the property sold for $116,746, (*see id.*), but it is unclear from the available record what exactly happened between June 2012, when the Sheriff's Deed states the foreclosure sale was originally scheduled, and June 2013, when the

---

[1] Exhibit 2 has two "Sub Exhibit A's", the complaint and Plaintiff's affidavit. For clarity, when referenced, the documents contained in these exhibits will be described by name.

sale actually took place.  Nor is the record clear as to whether Plaintiff had actual or constructive notice of the all of the scheduled or adjourned dates for the foreclosure sales, or by what means Defendant posted notice of such dates and adjourned dates.

In any event, Plaintiff did not attempt to redeem the property by December 4, 2013.  Rather, on November 26, 2013, Plaintiff filed a lawsuit in Oakland County Circuit Court and requested a preliminary injunction staying the redemption period. (Dkt. 32, pp. 11-12). The state court granted the request, and enjoined the redemption period until further court order. (Dkt. 32, Ex. 17, State Court Order). Defendant then removed the case to this Court in December 2013. (Dkt. 32, p. 12). After an unsuccessful settlement conference and an unsuccessful mediation, Defendant filed a motion to dismiss and in the alternative for summary judgment in March of 2015. (Dkt. 15). Plaintiff then filed a motion to adjourn and reopen discovery. (Dkt. 20).  This Court denied Defendant's motion without prejudice and granted Plaintiff's motion. (Dkt. 27). After discovery closed for a second time, Defendant again filed a motion to dismiss and in the alternative for summary judgment (Dkt. 32), which this Court now grants in part and denies in part.

### III. ANALYSIS

Defendant moves both to dismiss under Rule 12(b)(6) and for summary judgment under Rule 56. The Court addresses most of Plaintiff's claims under Rule 12(b)(6). But because Plaintiff adequately states a claim for wrongful foreclosure under Mich. Comp. Laws § 600.3220, the Court also analyzes that claim under Rule 56.

### A. Standard of Review

1. *Failure to State a Claim*

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court reasonably to infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

2. *Summary Judgment*

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563,

568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

## B. Discussion

Plaintiff asserts four causes of action in her complaint: Breach of Contract; Accounting; Injunctive Relief, Temporary Restraining Order and Order to Show Cause; and Wrongful Foreclosure. (Dkt. 1, Ex. 2; Sub Ex. A, Complaint). Defendant presents four arguments as to why the Court should dismiss the case. (Dkt. 32). First, Defendant argues that Plaintiff does not have standing because she never attempted to redeem the property. (*Id.* at 13). Second, Defendant argues that

6

Plaintiff may not challenge the foreclosure because she has neither alleged nor shown any fraud or irregularity concerning the foreclosure procedure. (*Id.* at 15). Third, Defendant argues that Plaintiff may not challenge the foreclosure because Plaintiff cannot show prejudice. (*Id.* at 17). And fourth, Defendant argues in a catch-all manner that judgment should still be entered in favor of Defendant even if Plaintiff's claims do not fail as a matter of law. (*Id.* at 21). Plaintiff responds only to Defendant's first argument on standing, and points to the state trial court's stay of the redemption period as evidence that the redemption period has not run and therefore that Plaintiff may still redeem the property. (Dkt. 38, pp. 5-6). After this response, Plaintiff turns to arguing in the affirmative that the foreclosure was improper and that there was a breach of contract, (*id.* at pp. 6-9), without addressing whether the complaint meets the standard of Rule 12(b)(6) or whether there is a dispute of material fact as to any cause of action such that the case should proceed past summary judgment.

1. *Lack of Standing and Lack of Allegations of Fraud or Irregularity*

Defendant argues first that Plaintiff has no standing because she did not attempt to redeem the property within the statutory redemption period. Defendant also argues that Plaintiff needed to allege fraud or irregularity to challenge the foreclosure. For Defendant to prevail on either of these arguments, the state court's stay of the redemption period would need to have been invalid. If Plaintiff lacks standing for failing to redeem the property within the required time, the redemption period would need to have ended. Likewise, for the obligation to allege

7

fraud or irregularity to have triggered, the redemption period would need to have ended. *See, e.g.*, *Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 359 (6th Cir. 2013) ("Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity'") (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)).

In removal cases, the federal district court "take[s] up the case where the State court left it off." *See Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (citing *Duncan v. Gegan*, 101 U.S. 810, 812, 25 L. Ed. 875 (1880)). "Further, although any orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal . . . it is well-settled that they do remain binding on the parties until formally set aside by the district court." *Chaz*, 137 F. App'x at 743 (internal quotations omitted); *see also* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court"). Here, Defendant made no effort to challenge the order staying the redemption period in the state court proceedings before removing the case to this Court; the order has been in force since it issued. Thus, the redemption period has not yet ended, and Defendant's two arguments premised on the assumption that the redemption period has ended must fail.[2]

---

[2] Defendant did file a motion to dissolve the state court's order, but did not do so until after all briefing had been completed on Defendant's motion to dismiss. As discussed in this Court's concurrent order denying Defendant's motion to dissolve, Defendant cannot assert procedural flaws

2. *Lack of Prejudice*

Defendant's third argument is that Plaintiff cannot show prejudice. It is not clear whether Defendant raises this argument under Rule 12(b)(6), under Rule 56, or under both rules. At times Defendant argues that Plaintiff has not "allege[d] that she was prejudiced." (Dkt. 32, p. 19). And at other times Defendant argues that Plaintiff "cannot establish any prejudice." (*Id.* at 21). The distinction is important because the Court may consider evidence under the Rule 56 analysis that it may not consider under the Rule 12(b)(6) analysis. Thus the Court will assume that Defendant makes both arguments, first, that Plaintiff's wrongful foreclosure cause of action does not state a claim upon which relief can be granted because Plaintiff has not alleged prejudice, and second, that there is no dispute of material fact such that a reasonable jury could find in favor of Plaintiff on Plaintiff's wrongful foreclosure cause of action because the facts taken in light most favorable to Plaintiff do not demonstrate any prejudice to Plaintiff.

As discussed below, Plaintiff has adequately pleaded a cause of action for wrongful foreclosure under Mich. Comp. Laws § 600.3220. With respect to whether Plaintiff has pleaded prejudice, then, the relevant question is whether Plaintiff has pleaded that she would have been in a better position to maintain her interest in the property had Defendant complied with § 600.3220. *See Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 162 Mich. App. 750 (Mich. Ct. App. 1987). Because this is a

_____

under the Federal Rules of Civil Procedure against a state court's order decided under state procedural law, and the factors that federal courts consider when analyzing preliminary injunctions weigh in favor of Plaintiff.

Rule 12(b)(6) inquiry, the Court must assume that Plaintiff's allegations of improper notice are true.

Here, Plaintiff has adequately pleaded prejudice. Specifically, paragraphs 38, 39, and 41 of the complaint (incorporated into the Wrongful Foreclosure cause of action by paragraph 56) allege that the property was sold in June 2013, that Plaintiff did not receive notice of the sale, and that Plaintiff only received notice that the property had been sold afterward, sometime in November 2013. (Dkt. 1, Ex. 2; Sub Ex. A, Complaint, pp. 6, 10). To be sure, "personal service is not required," *see Cheff v. Edwards*, 203 Mich. App. 557, 561 (1994), but the purpose of the statute's notice requirements is to ensure that a homeowner at least has an opportunity to learn of the sale before it happens. Plaintiff alleges that she did not receive notice of the sale until long after it occurred. (Dkt. 1, Ex. 2, Sub Ex. A, State Court Complaint, p. 6). Indeed, it was not until just after Plaintiff alleges she learned of the sale that she filed this lawsuit. (*Id.* at 10).

Had Defendant complied with the notice requirements, Plaintiff might have learned of the sale before it took place. If Plaintiff had in fact learned of the sale before it took place, she would have been in a position to file suit before the sale, and to seek an injunction prohibiting the sale until she could sort out whether Defendant had misapplied her payments. Plaintiff alleges that she is ready and able to make the monthly payments on the mortgage. (Dkt. 38, Ex. A, Kimberly Sower Aff., p. 5). Thus, taking all allegations as true, enjoining the sale could have enabled Plaintiff to resolve her concerns over her payment history, either by confirming her

10

suspicions of payment misapplication or by determining that Defendant's records were accurate. In either event, once Plaintiff's concerns were resolved, Plaintiff would have been able to resume making payments without Defendant needing to go forward with the sale. In other words, Plaintiff would have been in a better position to preserve her interest in the property.

Further, even if Plaintiff had not filed suit before the sale, if Defendant had complied with the notice requirements and Plaintiff had learned of the sale prior to it taking place, Plaintiff would have had more time to redeem the property than she will have if she is unsuccessful on the merits here and the stay is dissolved. This is true regardless of whether Plaintiff had eventually filed suit. If Plaintiff had decided to sue, she would have been able to file her complaint at any time during the running of the redemption period (from June 4, 2013 through December 4, 2014) instead of late in November 2013, after she learned of the sale, and only weeks before the redemption period expired. And if Plaintiff had not filed suit, she would have had the entire six-month redemption period to try to redeem the property. As things stand now, however, if Plaintiff is unsuccessful on the merits and the state court's stay is dissolved, Plaintiff will have only eight days to redeem the property. Consequently, Plaintiff has adequately pleaded prejudice.

Defendant has not met its burden of establishing an absence of evidence to support Plaintiff's claim of prejudice. To make such a showing, Defendant needed to establish (1) that Plaintiff's claims of payment misallocation were unfounded (meaning Defendant was entitled to foreclose) and (2) that Plaintiff would have

11

been unable to redeem the property (meaning any defect in notice would have been harmless; Plaintiff would have been unable to maintain her interest in the property regardless of whether Defendant had complied with the notice requirements).

Defendant has made the first showing. Plaintiff states that any payments to Defendant were made from Plaintiff's account with PNC Bank. (Dkt. 32, p. 5, Statement of Material, Facts 12 & 13; Dkt. 38, p. 2, Counter Statement of Facts, Facts 12 & 13). A cross-reference of Defendant's records and Plaintiff's bank records shows that Defendant's records are correct—each time Defendant claims that a payment was missed, Plaintiff's bank records confirm that no payment issued from Plaintiff's bank account at PNC Bank. (Dkt. 32, Fact Appx. Exs. 8 & 9, Chase Mortgage Statements and PNC Monthly Statements). But Defendant has not made the second showing. Although Plaintiff's PNC bank records show a monthly balance insufficient at any time to allow Plaintiff to redeem the property, Defendant offers no other evidence demonstrating that Plaintiff would have been unable to redeem the property. Plaintiff had an annual salary of approximately $65,000 and testified:

> Q. If you -- I'm asking if you had the ability to redeem to come up with the money?
> A. Yes, I would have if I had that opportunity to do so. I certainly questioned again why it went to -- why I wasn't notified, why I -- my payments are not being applied and why they're saying when they had canceled checks.
> Q. That's a pre-foreclosure event.
> A. I see.
> Q. I'm focusing -- I'm focusing on --
> A. Yes, sir. Had I been notified I could have been pushed up against the wall, yes, I could have come up with those based on the funds that I have for myself. I do have a full-time job. I have no other bills.

(Dkt. 32, Fact Appx. Ex. 4, Sower Dep., pp. 95-96). Defendant could have inquired further into whether Plaintiff had access to any other funds or means that would enable Plaintiff to redeem the property, but did not. Defendant presented no other bank statements demonstrating that Plaintiff did not have the $116,746 needed to redeem the property, nor did Defendant provide any evidence of Plaintiff's credit-unworthiness demonstrating that she would be unable to secure financing to redeem the property. Defendant has produced no evidence refuting Plaintiff's testimony that she could have redeemed the property. Plaintiff's testimony creates a genuine issue of material fact as to whether Plaintiff would have been able to redeem the property had Defendant followed the notice requirements.

Although the Court has been unable to identify a prior case where the homeowner alleged that the lender provided inadequate notice, learned of the sale prior to the expiration of the redemption period, filed suit before the expiration date, obtained a stay of the redemption period, saw the case removed to federal court, and survived both a motion to dismiss and a motion for summary judgment on a wrongful foreclosure cause of action, the result in this case is a logical extension of the result in *Yates v. United States Bank Nat'l Ass'n*, 912 F. Supp. 2d 478 (E.D. Mich. 2012).

In *Yates*, the court found both an adequate pleading of prejudice and a genuine dispute of material fact concerning prejudice where the lender adjourned the foreclosure sale for more than two years and the plaintiff did not learn of the sale

until *after* the redemption period expired. *(Id.)*. The difference between *Yates* and this case is that Plaintiff learned of the sale *before* the redemption period expired and was able to bring suit and stay the redemption period. In a sense, then, the prejudice here is not as severe as in *Yates* because Plaintiff still has an interest in the property. But the important inquiry in both cases is whether the homeowner would have been in a better position to maintain her interest in the property had notice been proper. As it was for the Plaintiff in *Yates*, Plaintiff here had "no reason to make an effort to redeem" (*id.* at 492) during the portion of the redemption period when Plaintiff was unaware of the sale. Each day that Plaintiff had no reason to make an effort to redeem made it more difficult to redeem once Plaintiff became aware that the redemption period was running. For Plaintiff, redeeming the property would require a one-time payment of $116,746. That is a substantial sum of money, and one that would be easier to procure given six months to do so rather than only eight days.

   3.   *Catch-All Argument*

Defendant argues that all four causes of action fail to meet the standard of Rule 12(b)(6), and in the alternative that the evidence obtained in discovery and submitted by the parties does not present a genuine issue of material fact and that Defendant is entitled to summary judgment pursuant to Rule 56.

   a.   *Breach of Contract*

Under Michigan law, a plaintiff must plead the following under a breach-of-contract cause of action: (1) the existence of a valid contract; (2) the terms of the

contract; (3) performance of things by the plaintiff; (4) conduct constituting breach by the defendant; and (5) damages. *Keywell and Rosenfeld v. Bithell*, 657 N.D.2d 759 (Mich. Ct. App. 2002). Plaintiff has alleged the existence of a valid contract, performance by Plaintiff, and damages. (See Dkt. 1, Ex. 2, Sub Ex. A State Court Complaint, pp. 6-7). But Plaintiff has not specified the terms of the contract, and has not connected Defendant's alleged failure to apply Plaintiff's payments and Defendant's miscalculation of the escrow payments to any specific provision of the contract. Therefore, Plaintiff's breach of contract cause of action fails to state a claim on which relief may be granted.

   b.  *Accounting*

Plaintiff alleges that "the amount of money due from Plaintiff to Defendant cannot be ascertained." (See Dkt. 1, Ex. 2, Sub Ex. A State Court Complaint, p.7). Defendant argues that Plaintiff's "Accounting" cause of action is not available because Plaintiff merely seeks the determination of the exact amount of money due under the loan. (Dkt. 32, pp. 21-22).

An accounting is "an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th. Cir. 1972). "The burden of proof is on plaintiff to show the inadequacy of the legal remedy," and "Michigan courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999). Further, "[t]he law is clear that an accounting may not be had where the

action is for a specific sum due under a contract." *Barkho v. Homecomings Fin.,
LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009) (quoting *Brown v. Brodsky*, 81
N.W.2d 363, 366 (Mich. 1957).

The law in this area is well established, and applies to mortgages. For example,
in *Barkho*, the court dismissed a claim for an accounting of a mortgage. *Id.* A
number of other cases also support the proposition. *See*, *e.g.*, *Yaldu v. Bank of Am.
Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010)  ("An accounting is not available
where the action is for [a] specific amount due under the contract."); *West v. Wells
Fargo Bank*, N.A., No. 2:12–cv–13572, 2013 U.S. Dist. LEXIS 89577, 2013 WL
3213269, at *6 (E.D. Mich. June 26, 2013) ("[A]n accounting is an extraordinary,
equitable remedy that is not permitted when a remedy at law is available and,
moreover, is inappropriate in cases regarding amounts due under a contract, such
as a note or mortgage."); *Colbert v. Fed. Nat'l Mortg, Ass'n*, No. 12-13844, 2013 U.S.
Dist. LEXIS 54475, 2013 WL 1629305, at *13 (E.D. Mich. Apr. 16, 2013) ("Because
the sums due under a mortgage and note can be determined by the parties'
contractual agreement, an accounting is unavailable."). Therefore, because Plaintiff
requests only a determination of the amount due under the loan, Plaintiff may not
pursue a cause of action for accounting. Plaintiff's second cause of action does not
pass the Rule 12(b)(6) threshold, and Defendant's motion to dismiss this cause of
action is granted.

c.   *Injunctive Relief, Temporary Restraining Order and Order to Show Cause*

Plaintiff's third cause of action in part asks the Court to enjoin Defendants from foreclosing on the house or to order the Defendants to provide an accounting to Plaintiff, and in part restates in conclusory terms that Defendant has breached its contract with Plaintiff. (*See* Dkt. 1, Ex. 2, Sub Ex. A, State Court Complaint, pp. 8-9). Defendant argues that this cause of action is actually not a cause of action, but rather a list of forms of relief. (Dkt. 32, p. 22). Defendant is correct.

The distinction between a cause of action and a form of relief is both real and important. As Michigan state courts have recognized, "[i]t is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." *Henry v. The Dow Chemical Co.*, 473 Mich. 63, 96-97 (2005). In other words, there must be a viable cause of action before there can be a remedy, and even then the cause of action must warrant the specific remedy sought. Here, Plaintiff's third cause of action lists a number of remedies but no specified cause of action. For example, injunctive relief "is an equitable remedy, not an independent cause of action." *Terlecki v. Stewart*, 278 Mich. App. 644, 663 (2008) (internal quotations omitted). So too are a temporary restraining order and an order to show cause. These remedies issue from the court's power in equity and impose obligations on parties to a lawsuit; they do not arise from conduct that meets the elements of certain legal claims, as do causes of action which begin outside the Court and are then brought there by the Plaintiff in a complaint at law.  Of course, Plaintiff might

17

still be able to seek injunctive relief or the other remedies as relief if she prevails in this case, but she cannot state those remedies as independent causes of action. Plaintiff's third cause of action fails to meet the threshold of Rule 12(b)(6), and Defendant's motion to dismiss this cause of action is granted.

### d.   *Wrongful Foreclosure*

Plaintiff's final cause of action is for wrongful foreclosure. Plaintiff identifies three statutory provisions in support of her claim for wrongful foreclosure:

- Mich. Comp. Laws § 600.3208, Notice of foreclosure; publication; posting

  – Notice that the mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given by publishing the same for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated. If no newspaper is published in the county, the notice shall be published in a newspaper published in an adjacent county. In every case within 15 days after the first publication of the notice, a true copy shall be posted in a conspicuous place upon any part of the premises described in the notice.

- Mich. Comp. Laws § 600.3212, Notice of foreclosure by advertisement; contents.

  – Every notice of foreclosure by advertisement shall include all of the following:
    a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.
    b) The date of the mortgage and the date the mortgage was recorded.
    c) The amount claimed to be due on the mortgage on the date of the notice.
    d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.
    e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.
    f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage

18

foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

- Mich. Comp. Laws § 600.3220, Sale; adjournment; notice; posting; publication:

  - Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned. No oral announcement of any adjournment shall be necessary.

It is not clear on which of these provisions Plaintiff bases her wrongful foreclosure claims; Plaintiff's later allegation that "Defendant's action has resulted in a violation of Michigan statutes concerning notice and publication for foreclosure by advertisement," (*see* Dkt. 1, Ex. 2, Sub Ex. A State Court Complaint, p. 10), is not specific enough to be useful to this Court. The Court will therefore address each statutory provision in the order Plaintiff lists them.

### (i.)   Mich. Comp. Laws § 600.3208

Plaintiff alleges that Defendant submitted no notice or publication, but also that all notices and publications were completed in May 2012 and June 2012. (*See* Dkt. 1, Ex. 2, Sub Ex. A State Court Complaint, p. 10). These allegations are inconsistent; either Defendant published the notices or it didn't. This inconsistency, however, is resolved by paragraph 61 of the complaint, which states that "[a]ttached as Exhibit 'BB' is a copy of the recording of Defendant in June 2013." (*Id.* at 11).

19

Exhibit BB includes an Affidavit of Publication stating that notice of the sale was published in Oakland County Legal News, a newspaper circulated in Oakland County, on May 15; May 22; May 29; and June 5, 2012. (*See* Dkt. 1, Ex. 2, Sub Ex. BB, p.3). Plaintiff's allegations therefore indicate that Defendant complied with the publication of notice requirements of Mich. Comp. Laws § 600.3208. To the extent that Plaintiff pleaded or sought to plead a cause of action under § 600.3208, the Court grants Defendant's motion to dismiss; a plaintiff may not state a claim for a violation of a law by alleging that a defendant complied with that law.

### (ii.)   Mich. Comp. Laws § 600.3212

Plaintiff nowhere alleges that the substance of Defendant's notices of the foreclosure sale were inadequate. Although Plaintiff states elsewhere in her complaint that Defendant would not or could not provide an accurate statement of how her payments were applied and how much money she owed, (*see* Dkt. 1, Ex. 2, Sub Ex. A, State Court Complaint, pp. 3-5, 7), Plaintiff does not attack the information contained in Defendant's notices of the foreclosure sale themselves. Plaintiff has failed to state a claim for wrongful foreclosure under Mich. Comp. Laws § 600.3212. To the extent that Plaintiff pleaded or sought to plead a cause of action under § 600.3212, the Court grants Defendant's motion to dismiss.

### (iii.)   Mich. Comp. Laws § 600.3220

Plaintiff alleges that "all notices and publications were completed in May 2012 and June 2012 or more then [sic] one full year before the property was actually sold at sheriff sale." (Dkt. 1, Ex. 2, Sub Ex. A State Court Complaint, p. 11). And the

Affidavit of Publication submitted with Plaintiff's Complaint supports Plaintiff's allegation. (See Dkt. 1, Ex. 2, Sub Ex. BB, p. 3). Although it could be stated with greater clarity, the rationale under of Plaintiff's argument is:  if § 3220 requires publishing a notice of adjournment each week at the place of sale (if adjourning week-by-week) or in the newspaper (if adjourning for more than one week), if the adjournment here was for one year, and if Defendant's last notice was nearly a year before the sale, then Defendant violated § 3220. Plaintiff therefore adequately states a claim under § 600.3220, and the Court must proceed to analyze the claim under Rule 56 to determine if the facts, taken in the light most favorable to Plaintiff, create a genuine issue of material fact that must go to the jury.

Plaintiff's claim under § 600.3220 survives summary judgment. "[U]nder Michigan law, an adjournment of one week or less is valid if notice of the adjournment is posted before or at the time of the sale and at the place where the sale is to be made. If the adjournment is for more than one week, however, notice must also be published in the newspaper in which the original notice was published[.]" *Bramlage v. Wells Fargo Home Mortg., Inc.*, 144 Fed. Appx. 489, 491 (6th Cir. 2006). Here, according to the Sheriff's Deed, the foreclosure sale was originally scheduled for June 12, 2012, but did not take place until June 4, 2013, almost one year later. (Dkt. 32, Ex. 16, Sheriff's Deed, p. 1).

To comply with § 3220, then, Defendant needed to do one of two things. First, Defendant could have adjourned the sale week-to-week by posting a notice of adjournment each week at the Oakland County Circuit Court at or before the time

21

of the sale. Second, Defendant could have adjourned the sale for more than a week by posting a notice of adjournment at the Oakland Country Circuit Court at or before the time of the initially scheduled sale and then publishing the original notice of sale and the notice of adjournment in the Oakland County Legal News within 10 days of the adjournment and then again once per week for the duration of the adjournment.

Defendant's opening brief does not state which method Defendant chose, but its reply brief states that "adjournment *notices* were posted at the place of sale from June 12, 2012 to June 4, 2013" and cites the Sheriff's Deed for support. (Dkt. 40, pp. 5-6) (emphasis added). The Sheriff's deed, however, states only that the sale was "[a]djourned from June 12, 2012 to June 4, 2013 by posting *a notice* of adjournment at the place of sale for Oakland County, Michigan." (Dkt. 40, Ex. 1) (emphasis added). This statement, alone, is not sufficient to prove that the sale was adjourned from week to week and that Defendant complied with its notice obligations by posting a new notice of adjournment each week the sale was adjourned anew. To be sure, the statement in the Sheriff's Deed is not inconsistent with posting a new notice of adjournment each week. *See Bramlage*, 144 F. App'x at 495. But to carry its burden Defendant needed to submit unambiguous evidence of its compliance with the week-to-week process.  This is particularly significant when the gravamen of Plaintiff's complaint is that she did not receive notice of the date of the sale until almost six months after it occurred.

The best evidence Defendant could have submitted would have been the weekly adjournment notices themselves—that is what the defendant did in *Bramlage*, and that was enough for the district court to conclude that "summary judgment was appropriate because the weekly notices . . . constituted irrefutable evidence that the sale 'was adjourned on a weekly basis' and that the posting of the weekly notices . . . complied with section 600.3220" and for the Sixth Circuit to affirm. (*Id.* at 492, 495). Since *Bramlage*, other courts have reached the same conclusion, albeit on motions to dismiss under Rule 12(b)(6). *See Jones v. Nationstar Mortg. LLC*, 2014 U.S. Dist. LEXIS 147509, at *16 (E.D. Mich. 2014) (dismissing the plaintiff's breach of contract claim premised on the allegation that defendant failed to comply with § 3220 when the defendant submitted the notices of adjournment as proof of compliance); *Ashford v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 156159, at *18 (E.D. Mich. 2013) (dismissing the plaintiff's § 3220 claim when the defendant submitted eighty-three notices of adjournment as proof of compliance).

In the absence of the weekly adjournment notices, Defendant could have submitted an affidavit of posting signed by the appropriate person from the Oakland County Sheriff's Department. Indeed, Defendant has submitted similar documents signed by: Jim Fleming (stating that he posted a notice of foreclosure on the front door of the property); Cindy Lawler (confirming that the initial foreclosure notice was published for four consecutive weeks in the Oakland County Legal News); Nakia Robinson (confirming that Defendant complied with the requirements of Mich. Comp. Laws §§ 600.3204 and 600.3205); and Nakia Robinson again

(confirming the purchase of the property by U.S. Bank National Association, as trustee of J.P. Morgan Mortgage Acquisition Trust 2006-NC2). (Dkt. 32, Ex. 13, Foreclosures Notices). In this case, Defendant has submitted neither the notices nor any affidavit attesting that they were posted as required. Defendant therefore has not carried its burden of establishing that it complied with the requirements of § 600.3220 for week-to-week adjournments. *See, e.g., Yates*, 912 F. Supp. 2d at 490-92 (finding an issue of material fact as to compliance with § 600.3220 when the defendant did not produce the weekly notices of adjournment).

The Court also notes that two letters sent by Defendant to Plaintiff, each notifying Plaintiff that the foreclosure sale had been rescheduled, were sent weeks in advance of the newly scheduled dates. (*See* Dkt. 1, Ex. 2, Sub Ex. Z, Letters from Defendant to Plaintiff). The first letter, dated September 19, 2012, notifies Plaintiff that the new sale date was October 2, 2012. (*Id.*). The second letter, dated September 24, 2012, notifies plaintiff that the new sale date was October 9, 2012. (*Id.*). These letters suggest that Defendant might have adjourned the sale for periods longer than one week, which would trigger the newspaper publication requirement of § 600.3220. Defendant has submitted no proof of publication of the adjournment notices. Therefore, if Defendant chose this method and was mistaken when stating otherwise in its reply brief, Defendant still has not carried its burden of demonstrating compliance with § 600.3220.

Finally, the Court takes note of a letter Defendant submitted as Exhibit 3 to its motion. The letter, addressed to Plaintiff and dated May 15, 2013, states that

Defendant will be replaced as the servicer of the loan effective June 1, 2013. (Dkt. 32, Ex. 3). Moreover, the letter tells Plaintiff to begin sending payments to that new servicer instead of to Defendant. (*Id.*). And what is more, the letter contains no reference to any foreclosure procedures. (*Id.*). Where the bank is presumably aware that a foreclosure sale was to be held in a matter of weeks, it is confusing, if not misleading, for the bank to send a letter to the homeowner advising that there will be a new servicer on the loan and that the homeowner should begin sending payments to that servicer, just days before the home is to be sold at foreclosure. Finally, and perhaps most troubling, the letter states:

> **What this means to you**
> After June 1, 2013:
>
> - Your loan number will change. SPS will send you a letter with your new account number.
> - You will need to send your mortgage payments to your new servicer.
> - You will need to contact your new servicer for any questions about your account.

The last bullet point is key. For years, Defendant and Plaintiff had been involved in an ongoing dispute over the calculation of Plaintiff's escrow payments and the application of Plaintiff's monthly mortgage payments. Now Plaintiff is being told to start over with a new servicer. Apart from the somewhat dismissive attitude this letter expresses toward Plaintiff's dispute with Defendant, it also implies an uninterrupted continuation of the loan payment process, seemingly the opposite of what was really happening: the house was being taken at foreclosure.

Even if Defendant had posted the notices of adjournment each week, and Plaintiff had actual notice of the continued adjournment, a letter such as

25

Defendant's could be reasonably interpreted to mean there was no further need to keep checking the courthouse: the direction to Plaintiff to begin paying a different servicer could reasonably be understood to suggest that there would be no foreclosure sale. If Plaintiff began to pay the new servicer and Defendant sold the property, then Plaintiff would have spent money that might be crucial to redeeming the property and which might be difficult to recover, and Defendant would have created even more confusion as to how much Plaintiff owed and to whom. And regardless of what Plaintiff knew or did, Defendant created a three-day window where Plaintiff would have needed to ask the new servicer what Defendant planned to do regarding the foreclosure sale.

Thus, viewing the evidence in a light most favorable to Plaintiff, the Court concludes that a reasonable jury could find: (a) Defendant did not comply with the notice requirements of Mich. Comp. Laws § 600.3220; (b) Plaintiff had no actual or constructive knowledge that the June 4, 2013 foreclosure sale would take place; (c) Plaintiff did not learn of the sale until November of 2013; (d) had Defendant complied with the notice requirements of Mich. Comp. Laws § 600.3220, Plaintiff might have learned of the foreclosure sale prior to November 2013; and (e) had Plaintiff learned of the foreclosure sale prior to November 2013, she would have been in a better position to preserve her interest in the property because should would have had time to file suit before the sale or because she would have had more than a handful of days to complete the redemption process. Defendant's motion for

summary judgment with respect to Plaintiff's cause of action for wrongful foreclosure as it relates to Mich. Comp. Laws § 600.3220 is therefore DENIED.

## IV. CONCLUSION

Defendant's Motion to Dismiss with respect to Plaintiff's claims under Count I, Breach of Contract; Count II, Accounting; Count III, Injunctive Relief, Temporary Restraining Order and Order to Show Cause; and Count IV, inasmuch as it relates to Wrongful Foreclosure under Mich. Comp. Laws § 600.3208 and Mich. Comp. Laws § 600.3212 is **GRANTED**. Defendant's Combined Motion to Dismiss and Motion for Summary Judgment with respect to Count IV, inasmuch as it relates to Wrongful Foreclosure under Mich. Comp. Laws § 600.3202 is **DENIED**.

**SO ORDERED.**

Dated: August 24, 2016                         s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on August 24, 2016, using the CM/ECF system, which will send notification to all parties.

                                               s/A. Chubb
                                               Case Manager

27